IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LIBERTY MUTUAL INSURANCE          )
COMPANY,                          )
                                  )
            Plaintiff,            )    Civil Action No. 15-1319
                                  )    Chief Magistrate Judge Maureen P. Kelly
        v.                        )
                                  )
THE MUNICIPAL AUTHORITY OF THE    )    Re: ECF No. 17
CITY OF MCKEESPORT,               )
                                  )
            Defendant.            )

## OPINION AND ORDER

**Kelly, Chief Magistrate Judge**

Plaintiff Liberty Mutual Insurance Co. ("Liberty Mutual") initiated this civil action against Defendant the Municipal Authority of the City of McKeesport ("the Authority") on October 9, 2015, alleging that the Authority breached of a series of Takeover Agreements entered into by the parties relative to six separate construction projects ("the Projects") owned by the Authority and guaranteed by Liberty Mutual.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

It is undisputed that the Authority entered into various wastewater treatment construction contracts ("the Contracts") with Galway Bay Corporation ("Galway") regarding the Projects in 2010 and 2011. ECF No. 12 ¶ 6; ECF No. 15 at 16-17, ¶ 17. The Contracts required Galway to secure performance and payment bonds guaranteeing the work, which were ultimately issued by Liberty Mutual. ECF No. 12 ¶ 8; ECF No. 15 at 17, ¶¶ 19, 20. In July of 2014, the Authority declared Galway in default of its contractual obligations and demanded that Liberty Mutual, as surety, undertake its responsibilities under the performance bonds and arrange for the completion of the Projects. ECF No. 12 ¶¶ 9, 10; ECF No. 15 at 18, ¶¶ 24, 25. As a result, the parties

entered into the Takeover Agreements presently at issue.  ECF No. 12 ¶ 11; ECF No. 15 at 18, ¶ 26.

On January 4, 2016, Liberty Mutual filed a First Amended Complaint ("Amended Complaint"), which remains the operative complaint, bringing claims against the Authority for breach of contract, including the implied duty of good faith and fair dealing (Count I); violations of the Prompt Pay Act, 62 Pa. C.S §§ 3901, *et seq.* ("the Act") (Count II); *Quantum Merit*: unjust enrichment (Count III); wrongful termination (Count IV); and an alternative claim for overpayment (Count V).  ECF No. 12.

On February 8, 2016, the Authority filed an Answer and Affirmative Defenses and Counterclaim against Liberty Mutual bringing counterclaims for breach of contract relative to each of the six Takeover Agreements (Counts I through VI); breach of contract relative to each of the six Takeover Agreements against Liberty Mutual as surety for the underlying contractor (Counts VII through XII); violations of the Act (Count XIII); fraud (Count XIV); contractual indemnification (Count XV); common law indemnification (Count XVI): and a counterclaim seeking a declaratory judgment (Count XVII).  ECF No. 15.

On February 25, 2016, Liberty Mutual filed a Motion to Dismiss Counterclaims XIII, XIV, XV, XVI and XVII ("the Motion"), which is presently before the Court.  ECF No. 17.  The Authority filed a Brief in Opposition to the Motion on March 16, 2016, and on March 23, 2016, Liberty Mutual filed a Reply Brief.  ECF Nos. 22, 26.  Accordingly, the Motion is ripe for review.

For the reasons that follow, the Motion will be granted.

## II.     STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).  The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint.  See California Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the Court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986).   Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

## III.  DISCUSSION

### A.  Violations of the Prompt Payment Act (Count XIII)

Liberty Mutual argues that the Authority's counterclaim brought at Count XIII of the Counterclaim is properly dismissed because the Authority, as a government agency and owner of the construction projects at issue, does not have a cause of action under the Act.  The Court agrees.

As the Pennsylvania Commonwealth Court has recently stated, the Act was enacted to "protect contractors and subcontractors against not being paid promptly for the work and materials they provide on a construction project."  E. Coast Paving & Sealcoating, Inc. v. N. Allegheny Sch. Dist., 111 A.3d 220, 230 (Pa. Commw. Ct. 2015).  See A. Scott Enterprises, Inc. v. City of Allentown, 102 A.3d 1060, 1070 (Pa. Commw. Ct. 2014), *appeal granted in part on other grounds*, 117 A.3d 1277 (Pa. 2015), *quoting* Pietrini Corp. v. Agate Constr. Co., 901 A.2d 1050, 1055 (Pa. Super. Ct. 2006) (the Act was enacted "to 'level the playing field' between government agencies and contractors . . .").  "It advances this goal by requiring a government agency that has acted in bad faith to pay the contractor's legal costs, as well as an interest penalty."  Id.  See Zimmerman v. Harrisburg Fudd I, L.P., 984 A.2d 497, 500-01, 501 n.5 (Pa. Super. Ct. 2009) (finding that the purpose of the Pennsylvania Contractor and Subcontractor Protection Act, which applies to owners of real property other than government agencies and mirrors the purpose of the Act, is to protect contractors and subcontractors and "to cure abuses within the building industry involving payments due from owners to contractors, contractors to subcontractors, and subcontractors to other subcontractors").

To this end, the Act expressly provides the following:

> (a) Penalty.—If arbitration or a claim with ... a court of competent
> jurisdiction is commenced to recover payment due under this subchapter

and it is determined that the government agency, contractor or subcontractor has failed to comply with the payment terms of this subchapter, ... the court may award, in addition to all other damages due, a penalty equal to 1% per month of the amount that was withheld in bad faith. An amount shall be deemed to have been withheld in bad faith to the extent that the withholding was arbitrary or vexatious. An amount shall not be deemed to have been withheld in bad faith to the extent it was withheld pursuant to section 3934 (relating to withholding of payment for good faith claims).

(b) Attorney fees.—Notwithstanding any agreement to the contrary, the prevailing party in any proceeding to recover any payment under this subchapter may be awarded a reasonable attorney fee in an amount to be determined by the ... court ... together with expenses, if it is determined that the government agency, contractor or subcontractor acted in bad faith. An amount shall be deemed to have been withheld in bad faith to the extent that the withholding was arbitrary or vexatious.

62 Pa. C.S. § 3935.  The Act also provides:

**(a) Entitlement of contractor to payment.--**Performance by a contractor in accordance with the provisions of a contract shall entitle the contractor to payment by the government agency.

**(b) Entitlement of subcontractor to payment.--**Performance by a subcontractor in accordance with the provisions of a contract shall entitle the subcontractor to payment from the contractor with whom the subcontractor has contracted.

62 Pa. C.S. § 3931.  In addition, the Act delineates the progress payment obligations of the government agency and when it is appropriate for the government agency to withhold payments.

62 Pa. C.S. §§ 3932, 3934.  The Act, however, has no similar provisions setting forth the circumstances under which a government agency would be entitled to payment or any provisions governing payments owed or withheld by a contractor, except to the extent payments are owed to a subcontractor.  The Act therefore only provides for a cause of action by a contractor against a government agency for improperly withholding payments; it does not provide a government agency with a cause of action against a contractor.  See Cecil Twp. Mun. Auth. v. N. Am. Specialty Sur. Co., 836 F. Supp. 2d 367, 381 (W.D. Pa. 2011) ("Section 3395 may be invoked

only for one type of specific action -- withholding payments otherwise due to a contractor by a government agency -- and only when there is a finding that the withholding was done in bad faith"); E. Coast Paving & Sealcoating, Inc. v. N. Allegheny Sch. Dist., 111 A.3d at 230 ("the Prompt Pay Act applies only where the payment is owed by a government agency").[1]  As such, the Authority has no cause of action under the Act and Count XIII of the Counterclaim will be dismissed.

## B.    Fraud (Count XIV)

The Authority alleges at Count XIV of the Counterclaim that Liberty Mutual induced the Authority into executing the Takeover Agreements by representing that it would complete all of the work on the Projects in exchange for payment of the remaining contract balances less additional reductions for accruing liquidated damages, and that Liberty Mutual agreed that the Authority would, and should, withhold liquidated damages from future payments until the work was complete.  The Authority claims that Liberty Mutual knew when it made the representation that it was false and, after entering into the Takeover Agreements, Liberty Mutual submitted pay applications that overstated the amounts to which it was entitled by failing to account for liquidated damages.  Liberty Mutual contends that the Authority's counterclaim for fraud is barred by the "gist of the action doctrine" because it is duplicative of the Authority's counterclaim for breach of contract.

"As a practical matter, the [gist of the action] doctrine precludes plaintiffs from recasting ordinary breach of contract claims into tort claims."  eToll, Inc. v. Ellias/Savion Advert., Inc., 811 A.2d 10, 14 (Pa. Super. 2002).  Thus, the gist of the action doctrine will bar a claim for fraud

---

[1] The Authority's arguments to the contrary are unavailing.  The meritoriousness of Plaintiff's claims has no bearing on whether the Authority has a cause of action under the Act.  Moreover, the fact that Section 3935 of the Act allows the prevailing party to recover attorney's fees does not somehow provide the Authority, or any other government agency, with an independent cause of action.  The Authority may recover attorney fees if it prevails on Plaintiff's claims brought pursuant to the Act at Count II of the Amended Complaint.

when: (1) the claim arises from a contract between the parties; (2) the duties breached were created by the contract; (3) liability derives from the contract; or (4) where the success of the tort claim is wholly dependent upon the contract's terms. Id. at 19. In determining whether the gist of the action doctrine applies the Pennsylvania Superior Court has explained that "a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.'" Id. at 14, *quoting* Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001). "In other words, the court must inquire as to the source of the duties allegedly breached: 'if the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort.'" Cunningham Lindsey U.S., Inc. v. Bonnani, No. 13-2528, 2014 WL 1612632 (M.D. Pa. Apr. 22, 2014), *quoting* The Knit With v. Knitting Fever, Inc., Nos. 08-4221 & 08-4775, 2009 WL 3427054, at *13-14 (E.D. Pa. Oct. 20, 2009), *aff'd* 625 F. App'x 27 (2015).

Here, the Authority argues that because its counterclaim for fraud is one for fraud in the inducement, as opposed to fraud in the performance of the contract, the gist of the action doctrine does not apply. More specifically, the Authority argues that its counterclaim relates to fraudulent promises that induced it to enter into the Takeover Agreements and Liberty Mutual's agreement to perform obligations that it never intended to perform and thus its counterclaim is not founded on the Takeover Agreements. Where, however, "the false representations concerned duties later enshrined in the contract," the gist of the action doctrine will nevertheless bar claims for fraud in the inducement. Vives v. Rodriguez, 849 F. Supp. 2d 507, 518-520 (E.D. Pa. 2012) (summarizing the development of "gist of the action" case law in Pennsylvania and holding that fraud in the inducement claims arising out of a misrepresentation as to a party's intent to perform

7

contractual duties are barred where the obligation at issue is included in the contract). See Wen v. Willis, 117 F. Supp. 3d 673, 681-83 (E.D. Pa. 2015), *quoting* Integrated Waste Solutions, Inc. v. Goverdhanam, No. 10-2155, 2010 WL 4910176, at *11 (E.D. Pa. Nov. 30, 2010) ("it is equally the case . . . that '[w]here the precontractual statements that are the basis for the fraudulent inducement claim concern specific duties that the parties later outlined in the alleged contract, courts have repeatedly dismissed such claims as sounding in contract and, thus, barred by the gist of the action doctrine'"). Because the misrepresentation at issue in this case concerns Liberty Mutual's contractual obligation to accurately submit pay applications for work performed less liquidated damages, the Authority's fraud counterclaim is barred by the gist of the action doctrine and properly dismissed.

### C.     Common Law Indemnification (Count XVI)

Liberty Mutual also argues that the Authority's counterclaim for common law indemnification should be dismissed because it is barred by the gist of the action doctrine. The Court agrees.

As recently stated by this Court:

> the Pennsylvania Supreme Court has held that where "there is a written contract setting forth the rights and duties of the parties," the terms of the contract, rather than common law principles of indemnity, govern. [*Eazor Express Inc. v. Barkley*, 441 Pa. 429, 272 A.2d 893 (Pa. 1971]. The Third Circuit Court of Appeals is in agreement. *See Foster v. Pennsylvania R. Co.*, 201 F.2d 727, 731 (3d Cir. 1953). Thus, Plaintiff is entitled to indemnity under the Agency Agreement or it is not entitled to indemnity at all. It cannot seek to "enlarge upon or expand upon the express contractual provisions" by relying on the common law. *Wyoming Johnson, Inc. v. Stag Indus., Inc.*, 662 P.2d 96, 102 (Wyo. 1983) (*citing Eazor*, 272 A.2d at 431).

Fid. Nat'l Title Ins. Co. v. B & G Abstractors, Inc., No. 15-835, 2015 WL 6472216, at *10 (W.D. Pa. Oct. 27, 2015). See EQT Prod. Co. v. Terra Servs., LLC, ___ F. Supp. 3d ___, ___ (2016), No. 14-1053,  2016 WL 1435448, at *5 (W.D. Pa. Apr. 12, 2016), *quoting* Bracken v.

Burchick Constr. Co., No. 1432 WDA 2012, 2014 WL 10790110, at *7 (Pa. Super. Ct. Oct. 10, 2014), *appeal denied* 119 A.3d 349 (Pa. 2015) ("[c]ommon law indemnity concerns are irrelevant to our determination here since the parties entered into a written contract of indemnity that specifically sets forth the rights and duties of each party to the contract").

Although the term "gist of the action" is not expressly used, the essence of the Courts holding in Fid. Nat'l Title Ins. Co. v. B & G Abstractors, Inc., is the same, namely, that when the parties' obligations are defined by the terms of a contract, claims should be limited to contract claims. Because it is undisputed that a written contract exists between the parties regarding any duty Liberty Mutual may have to indemnify the Authority, the Authority's counterclaim for common law indemnification will be dismissed. See ECF No. 15 ¶ 166.

### D. Contractual Indemnification (Count XV)

The Authority alleges at Count XV of the counterclaim that Liberty Mutual is liable to it for contractual indemnification. Specifically, the Authority alleges that:

> 163. Liberty Mutual has failed to complete its work in accordance with the contract documents.
>
> 164. As a result of Galway's and Liberty's actions, the Authority has been exposed to various this party claims for payment, and the Authority has incurred substantial time and expense in responding to those claims.
> 165. As a result of Liberty's failure to complete its work under the contract documents, the Authority has been exposed to liability from at least one other prime contractor, Bronder Technical Services ("**Bronder**"), as Galway's action increased the cost of Bronder's work due to Liberty's failure to complete the work in accordance with the Contract.
>
> 166. Since any liability to any other contractor arises from the failure of Liberty and/or Galway, in whose stead Liberty stands as surety, Liberty owes a duty to indemnify the Authority under sections E6.6 of the Galway Contracts.

ECF No. 15 at 37-38. Liberty Mutual argues that the Authority's counterclaim should be dismissed as it is devoid of facts necessary to state a claim.

Indeed, other than Bronder, the Authority has failed to plead what third parties have "exposed" the Authority to claims for payment; what the alleged claims for payment revolve around; what were the amount of the claims; and what specific expenses or damages did the Authority incur as a result. Even with respect to Bronder, the Authority fails to identify how Liberty Mutual and/or Galway's actions increased the cost of Bronder's work; for what project(s); in what amount; the nature of Bronder's claims against the Authority; and what specific expenses or damages the Authority incurred as a result. In short, the Authority has made a conclusory claim that it has been exposed to damages without alleging any facts to show what it is that Liberty Mutual is allegedly liable for. The Authority therefore has failed to state a counterclaim for contractual indemnification and Count XV is properly dismissed.

This notwithstanding, the Authority has requested the opportunity to amend the Counterclaim should the Court determine that its counterclaim for contractual indemnification is insufficiently pled. Because Liberty Mutual has asked, albeit in the alternative, that the Authority be required to furnish a more definite statement, the Court will allow the Authority to file an Amended Counterclaim with respect to Count XV.

E.     **Declaratory Judgment (Count XVII)**

At Count XVII of the Counterclaim, the Authority seeks a declaratory judgment concerning Liberty Mutual's obligations with respect to the Projects at issue. Specifically, the Authority seeks a declaration that the operative date of substantial completion is as determined by its engineer; that Liberty Mutual is obligated to honor the warranty and perform work necessary to remedy any defective work or mechanical failure arising during the warranty period; and that Liberty Mutual is obligated to defend and indemnify the Authority from all claims arising out of or relating to Galway's or Liberty Mutual's work on the Projects. Liberty

Mutual asks that the Authority's counterclaim in this regard be dismissed to the extent the

Authority seeks a declaration that Liberty Mutual is obligated under the warranty to remedy

work that may become defective or mechanical failure that may occur in the future because until

such time as a defect or a mechanical failure arises, there is no controversy to be decided.

Liberty Mutual also argues that the Authority's request for declaratory relief relative to Liberty

Mutual's obligation to defend and/or indemnify the Authority for claims that have already been

asserted against it should be dismissed as duplicative of the Authority's breach of contract

claims.

> The Declaratory Judgment Act provides that "in a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such a declaration...." 28 U.S.C. § 2201(a). Jurisdiction is dependent on the existence of a "case or controversy" as required by Article III of the United States Constitution. To present a justiciable case or controversy, a case must be ripe for review. *See Artway v. Attorney Gen.,* 81 F.3d 1235, 1246–47 (3d Cir.1996). . . . "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998).

Mkt. St. Sec., Inc. v. NASDAQ OMX PHLX LLC, 900 F. Supp. 2d 529, 532 (E.D. Pa. 2012). In

order to determine whether an action for declaratory judgment is ripe, the United States Court of

Appeals for the Third Circuit counsels courts to consider: 1) the adversity of the parties' interest;

2) the conclusiveness of the judicial judgment; and 3) the practical help, or utility of that

judgment. Id. at 533, *citing* Step–Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 647 (3d

Cir. 1990). See Access Ins. Co. v. Carpio, 861 F. Supp. 2d 539, 542 (E.D. Pa. 2012).

With respect to the first consideration -- the adversity of the parties' interest -- the party

seeking a declaratory judgment "need not have suffered a 'completed' harm, but there must be a

substantial threat of real harm that remains throughout the litigation. Mkt. St. Sec., Inc. v.

NASDAQ OMX PHLX LLC, 900 F. Supp. 2d at 533, *citing* Presbytery of N.J. of the Orthodox

Presbyterian Church v. Florio, 40 F.3d 1454, 1463 (3d Cir. 1994). "[A] potential harm that is 'contingent' on a future event occurring will likely not satisfy [the adversity of interest] prong of the ripeness test." Access Ins. Co. v. Carpio, 861 F. Supp. 2d at 543, *quoting* Pittsburgh Mack Sales & Serv. Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66, 580 F.3d 185, 190 (3d Cir. 2009).

Here, the Authority argues that, contrary to Liberty Mutual's argument, its counterclaim is not based on hypothetical future claims as Liberty Mutual has already refused to complete the underlying contract work and/or correct defective work thereby failing to honor the warranty. The Authority therefore contends that Liberty Mutual must be required to honor its obligations under the contracts that it has failed to perform thus far. Liberty Mutual, however, only asks that the Authority's counterclaim for declaratory judgment be dismissed to the extent it seeks a declaration regarding work that may become defective or mechanical failure that may occur in the future. The fact that Liberty Mutual may have failed to honor the warranty in the past does not automatically entitle the Authority to a declaration requiring Liberty Mutual to honor the warranty in the future as any potential harm to the Authority is necessarily contingent on future events, *i.e.*, a mechanical failure or other defect "that may not occur as anticipated, or indeed may not occur at all." Mkt. St. Sec., Inc. v. NASDAQ OMX PHLX LLC, 900 F. Supp. 2d at 532. Under these circumstances, it cannot be said that there is adversity between the parties with respect to future obligations. See Invensys Inc. v. Am. Mfg. Corp., No. 14-3744, 2005 WL 600297, at *6 (E.D. Pa. Mar. 15, 2005), *quoting* Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1154 (3d Cir. 1995) ("[p]arties' interests are adverse where harm will result if the declaratory judgment is not entered").

Similarly, for a declaratory judgment to be conclusive, thereby satisfying the second consideration, it must definitively decide the rights of the parties. <u>Mkt. St. Sec., Inc. v. NASDAQ OMX PHLX LLC</u>, 900 F. Supp. 2d at 534. A declaratory judgment based on a contingency, however, fails to change either party's legal status and therefore would be inconclusive. <u>Id.</u> Indeed, even if the Court were to enter the declaration the Authority seeks, its rights would not be affected unless and until a mechanical failure or other defect occurs. Moreover, any such declaration with respect to Liberty Mutual's obligations under the warranty and/or indemnification provisions would merely serve to reiterate the terms of the Takeover Agreements which both parties contend the other has breached. <u>See Invensys Inc. v. Am. Mfg. Corp.</u>, 2005 WL 600297, at *7-8. A declaratory judgment regarding Liberty Mutual's obligations under the warranty and indemnification provisions therefore would not definitively decide the parties' rights and would not be conclusive.

Finally, the third consideration -- the utility of the declaration sought -- concerns "whether the parties' plans or actions are likely to be affected by a declaratory judgment." <u>Id.</u> at *8. As previously discussed, the declarations sought by the Authority would merely restate the terms of the Takeover Agreements which would not alter the parties' present positions or provide any practical help in resolving the instant controversy. <u>Id.</u> Accordingly, no useful purpose would be served by entering a declaratory judgment and the Authority's counterclaim brought at Count XVII will be dismissed.

**IV.     CONCLUSION**

For the foregoing reasons, Liberty Mutual's Motion to Dismiss Counterclaims XIII, XIV, XV, XVI and XVII is properly granted.  Accordingly, the following Order is entered:

**<u>ORDER</u>**

AND NOW, this 3rd day of June, 2016, upon consideration of Liberty Mutual's Motion to Dismiss Counterclaims XIII, XIV, XV, XVI and XVII, the Authority's Brief in Opposition to the Motion and Liberty Mutual's Reply Brief, IT IS HEREBY ORDERED that the Motion, ECF No. 17, is granted with prejudice with respect to Counterclaims XIII, XIV, XVI and XVII, and granted without prejudice to filing an Amended Counterclaim solely with respect to Counterclaim XV.  IT IS FURTHER ORDERED that in the event the Authority decides to Amend the Counterclaim it shall do so on or before June 20, 2016.

BY THE COURT:


/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE


cc:     All counsel of record via CM/ECF