IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LIBERTY MUTUAL INSURANCE
COMPANY,

    Plaintiff / Counterclaim-Defendant,

No. 2:15-cv-01319-MPK

v.

THE MUNICIPAL AUTHORITY OF THE
CITY OF MCKEESPORT,

    Defendant / Counterclaim-Plaintiff.

## FIRST AMENDED COUNTERCLAIM

The Municipal Authority of the City of McKeesport ("**the Authority**") asserts the following as its First Amended Counterclaim against Liberty Mutual Insurance Company ("**Liberty**") pursuant to this Honorable Court's Order dated June 3, 2016 (Doc. 27), without waiver or prejudice:

### COUNTERCLAIM COUNT XV
### Contractual Indemnification

162.    The Authority hereby incorporates the material averments of its original Counterclaim as if set forth at length herein.

163.    Upon information and belief, all of the underlying facts and circumstances of the claims asserted herein are known to Galway and/or Liberty.

164.    Each of the General Conditions of Contracts (2010-1, 2010-3, 2010-5, 2010-7, 2010-9, and 2010-11) contains Liberty's legal obligation to "protect, defend, indemnify, exonerate, and hold [the Authority] and [KLH] harmless" as follows:

1

> CONTRACTOR agrees to protect, defend, indemnify, exonerate and hold OWNER and ENGINEER harmless from and against any and all suits, claims, liability, losses, liens and demands, fines, costs, criminal and civil penal ties, cause of action or any other obligations arising out of or in any manner connected with incidents involved in bodily injury, death, property damage or any violation or alleged violation of any federal, state, provincial or local law or regulation, except as solely caused by the OWNER and/or ENGINEER.

**Contract**, Section E6.6, at E-11.

      162.    Each of the General Conditions of Contracts (2010-1, 2010-3, 2010-5, 2010-7, 2010-9, and 2010-11) contains Liberty's legal obligation to "protect, defend, indemnify, exonerate, and hold [the Authority] and [KLH] harmless" as follows:

> **E6.10 Use of Premises**
> CONTRACTOR shall confine its work on the Project site and land and areas to which the OWNER holds title, rights-of-way, permits, or easements. Contractor shall not unreasonably encumber the premises with construction equipment or other materials or equipment. CONTRACTOR shall assume full responsibility for any damage to any such land or area, or to the owner or occupant thereof or of any land or areas contiguous thereto, resulting from the performance of the Work. Should any claim be made against OWNER or ENGINEER or resulting from the acts and/or deeds of the CONTRACTOR, its agent and/or employees, or invitees, CONTRACTOR shall promptly attempt to settle with such other party by agreement or otherwise resolve the claim by arbitration or at law. CONTRACTOR shall, to the fullest extent permitted by Laws and Regulations, indemnify and hold OWNER and ENGINEER harmless from and against all claims, damages, losses and expenses {including, but not limited to, fees of engineers, architects, attorneys and other professionals and court and arbitration costs) arising directly, indirectly or consequentially out of any action, legal or equitable, brought by any such other party against OWNER or ENGINEER arising in whole, or in part, out of CONTRACTOR's performance of the Work.

**Contract**, Section E6.10, at E-12.

2

163. Each of the Specifications of Contracts (2010-1, 2010-3, 2010-5, 2010-7, 2010-9, and 2010-11) contains Liberty's legal obligation to defend, indemnify, and hold harmless the Authority from any governmental penalties, fines, and damage claims resulting from the release of contaminants or waste material into the environment:

> **V. Protection from Hazardous Substances and Contaminating Materials**
> CONTRACTOR shall take all measures to prevent the release, spillage or improper disposal of any hazardous substance or construction or waste materials which may contaminate the wastewater treatment process, equipment, tanks or piping, and the OWNER's or adjacent properties or the environment or substantially endanger human health. The transportation, handling, storage and use of gasoline, oils, paints, residual cleaning sol vents and other hazardous substances or contaminating materials by CONTRACTOR or any subcontractor shall be in such a manner to prevent release, spillage or improper disposal. Should any such hazardous substances or contaminating materials be released, spilled or improperly disposed of by the CONTRACTOR or any subcontractors, the CONTRACTOR shall immediately notify the OWNER, notify any applicable environmental agency as required by law, and immediately remedy or remove such substances or materials, and clean and restore the affected areas to a safe condition and ~ to the satisfaction of the OWNER and any applicable environmental agency. The CONTRACTOR shall pay all costs for the remedy or removal of contaminated materials and the proper disposal of them at an approved and permitted site and the restoration of the affected area. The CONTRACTOR shall also be responsible for the payments of and shall indemnify, hold harmless and defend the OWNER, ENGINEER and ENGINEER's Consultants from all penalties, fines and damage claims resulting from the release, spillage or improper disposal by CONTRACTOR or any subcontractor of any such hazardous substances or contaminating material.

**Contract**, Section 01041, at 01041-10.

164. The forgoing obligations are referred to as Liberty's "Indemnity Obligations".

165. Galway's and Liberty's conduct and breaches of contract have exposed the Authority to various third party claims falling with the scope of the Indemnity Obligations and causing the Authority to incur direct and indirect costs to address those via payments to third parties, legal fees, consultant costs, and other legal harm and damages required to be reimbursed by Liberty to the Authority.

166. Galway and Liberty are required to indemnify the Authority due to a claim from Bronder Mechanical ("**Bronder**") as follows:

   a. As Liberty should know, Bronder served as the electrical prime contractor on the Waste Water Treatment Plant;

   b. Under the contractual obligation of Liberty and due to normal construction practices, the electrical contractor is a follow along contractor that must await performance of the general contractor before it can perform substantially all of its work;

   c. Thus, when Galway and Liberty failed to meet its Project milestones, Bronder could not perform its work because Galway and Liberty failed to complete the antecedent tasks required to be completed;

   d. Additionally, Bronder could not perform work for a substantial period of time until Liberty caught up after it took over the work;

   e. During that period of time, Bronder incurred direct and indirect costs associated with the added time it had to devote resources to the Project and other costs;

   f. The Authority requested Liberty satisfy Bronder's demand, but it failed and refused to do so;

    g. In order to protect its legal rights and to mitigate its damages, the Authority settled Bronder's claims by payment of $230,00.00, which falls within the Indemnity Obligations;

    h. The Bronder claims caused the Authority to incur legal fees and costs associated with the claim.

167. Galway and Liberty are required to indemnify the Authority to claims from the County of Allegheny Department of Health ("**ACHD**") as follows:

    a. ACHD regulates and enforces various regulations relating to the Project, including regulations (including but not limited to Pennsylvania Clean Streams Law; Pennsylvania Sewage Facilities Act; Pennsylvania Department of Environmental Protection Rules and Regulations, Chapters 71, 72, 73, 92, 94, 95, and 101; and the ACHD Rules & Regulations Article XIV, "Sewage Management", as amended) the govern the dry condition overflows of untreated waste from the system to natural waterways;

    b. As the Authority was required to turn over the system to the contractor during construction, the Contracts obligated Galway and Liberty to accept responsibility for ensuring compliance with the ACHD requirements;

    c. During Galway and/or Liberty's control of the Project, ACHD informed the Authority of one or more violations of the regulations, which subject the Authority to fines, penalties, and the like, as set forth in the regulations;

    d. On November 14, 2014, ACHD issued a notice of violation to the Authority based in whole or party on Galway and/or Liberty's failure to maintain the system and causing "dry weather overflows" ("DWOs");

    e. On December 11, 2014, the Authority appealed the Notice dated November 14, 2014;

    f. The ACHD issue remains unresolved, but the Authority is exposed to claims which may result in fines or penalties in excess of $600,000.00;

    g. As a result, the Authority is incurring fees and costs responding to the Notice and its Appeal.

168. Galway and Liberty are required to indemnify the Authority to losses relating to Elizabeth Township and the Elizabeth Township Sanitary Authority (collectively "**Elizabeth Township**") as follows:

    a. The Authority system expansion had been designed to accommodate additional sewage flow from adjoining service areas, including adjacent Elizabeth Township;

    b. Elizabeth Township had been ordered by the Pennsylvania Department of Environmental Protection and/or others pursuant to a 2008 Consent Decree;

    c. According to the ACHD, "The second phase requires the Elizabeth Township Sanitary Authority to convey its flow to the McKeesport Municipal Authority's sewage treatment plant no later than the date by which that plant is expanded and becomes ready to accept the flow."

    d. Liberty's conduct in failing to complete the Projects in order to accept the flow from Elizabeth Township prevented ACHD from forcing Elizabeth Township to connect to the Authority's system;

    e. Liberty's failure to meet the Contract's schedule requirements caused the Authority to not realize, receive and obtain substantial revenue from the planned, anticipated and billed charges;

    f. The Authority has billed but not received from Elizabeth Township averaging approximately $100,000.00 per month, in amounts, dates, times, and details to be provided to Liberty.

    g. Pursuant to the Contracts, Liberty must reimburse the Authority for its losses of approximately $2.4 million due to the loss of revenue to the Authority.

169. Liberty and Galway have caused the Authority to expend time, effort, expense, dollars, fees, and other legal harm and damages in responding to claims from Galway and Liberty's contractors and suppliers, including Estherlee Fence Co., Twin Flooring, LLC, Thompson Pump, LLC, and others known to Liberty.

170. The Authority has incurred other costs, attorney fees, and claims meeting the scope of Indemnity Obligations due to Galway and Liberty's failure to pay Galway's subcontractors and/or material suppliers in amounts, dates, times, and details to be provided to Liberty.

171. Accordingly, Liberty is obligated to reimburse the Authority for all amounts paid by the Authority within the scope of the Indemnity Obligations as set forth above, in addition to all third party claims raised to or against the Authority relating to the Projects.

172. Pursuant to Liberty's Indemnity Obligations, the Authority is entitled to be indemnified for the Authority's Damages for any project related claims and all other:

    a. Actual damages;

    b. Consequential damages;

   c. Costs of suit;

   d. Legal fees; and

   e. Such other relief as this Court deems just and proper.

WHEREFORE, Counterclaim-Plaintiff The Municipal Authority of the City of McKeesport hereby demands judgment in its favor and against Plaintiff/Counterclaim Defendant Liberty Mutual Insurance Company.

## PRESERVATION OF CLAIMS

173. The Authority preserves without waiver the right to seek reconsideration, to seek court approval to re-plead, or to appeal any count and claim affected by this Court's June 3, 2016 Opinion and Order.

WHEREFORE, Counterclaim-Plaintiff The Municipal Authority of the City of McKeesport hereby demands judgment in its favor and against Plaintiff/Counterclaim Defendant Liberty Mutual Insurance Company.

Respectfully Submitted,

CREENAN & BACZKOWSKI, PC

BY:   */s James W. Creenan*
_____
James W. Creenan, Esquire
Pa. ID. No. 79213